# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| STANLEY WOFFORD, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 3543 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jeffrey Cole |
| OFFICER CELANI, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The *pro se* plaintiff, Mr. Wofford was sentenced to serve 20 years in prison for second degree murder in August 2000, but only had to serve 9 years. As a condition of his release, he agreed to 2 years of rather stringent conditions under mandatory supervised release. He signed the mandatory supervised release on July 21, 2009. One of the conditions he agreed to was to "consent to a search of [his] person, property, or residence under [his] control." Not surprisingly, he also agreed to refrain from possession of controlled substances. (*Defendant's Ex. D*). A month after the plaintiff signed the mandatory supervised release agreement, he violated one of its terms, and a parole warrant was issued for his arrest on August 3, 2009. (*Defendant's Ex. E*). A couple of weeks later, Officer Celani and his colleagues pulled Mr. Wofford over on the South Side of Chicago. He was driving a Cadillac while wearing a bulletproof vest. He was also in possession of marijuana. The plaintiff was arrested pursuant to the warrant.

The plaintiff filed suit against Officer Celani, the City of Chicago, and the Chicago Police Department. According to the plaintiff's complaint, Officer Celani and the two other unknown

officers stopped him and searched his vehicle for no reason other than harassment. They took his bulletproof vest, impounded his vehicle, and falsely charged him with possession of marijuana. The plaintiff claims the conduct violated his Constitutional right to be secure from unreasonable searches and seizures. (Dkt. #23, Count I). He adds a second count charging an Officer John Doe with permitting a custom and practice of widespread unreasonable searches and seizures against young black males for no reason other than harassment. (Dkt. #23, Count II). Officer Celani has moved for summary judgment as to all claims against him.

Officer Celani filed his motion on July 20, 2012. The plaintiff had until August 31st to respond. (Dkt. # 56). When he failed to do so, the court on it own motion extended the deadline to September 21st, but cautioned the plaintiff that if he missed that deadline as well, a ruling would be made on Officer Celani's motion without a response from plaintiff. (Dkt. # 71). The plaintiff missed that deadline but it was discovered that Officer Celani had not provided the plaintiff with the required notice of the local rules pertaining to summary judgment motions. (Dkt. # 72). Officer filed and served the required notice on October 12, 2012 (Dkt. #73-74), and the plaintiff was then given until November 2nd to respond to Officer Celani's motion for summary judgment. (Dkt. #75).

On October 15th, the plaintiff called into a status hearing to say that he had not received the notice or Officer Celani's summary judgment motion and memorandum. (Dkt. #75). Officer Celani was directed to mail the materials to the plaintiff once again, and the plaintiff was granted another extension to November 30th to respond to the motion for summary judgment. (Dkt. #75). He has missed that deadline as well and has not alerted the court that there was any additional trouble with Officer Celani's mailing, so a ruling will be made based Officer Celani's submissions alone

# I.
# ANALYSIS

## A.
## Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact." Fed.R.Civ.P. 56(a). While a party moving for summary judgment need not introduce evidence rendering its opponents' claims altogether impossible, the movant "always bears the initial responsibility" of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 496-97 (7th Cir. 2011); *Stevens v. Housing Authority of South Bend, Indiana*, 663 F.3d 300, 305 (7th Cir. 2011). This is done by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 324; *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 979 (7th Cir.1996) ("Only after the movant has articulated with references to the record and to the law specific reasons why it believes there is no genuine issue of material fact must the nonmovant present evidence sufficient to demonstrate an issue for trial."). Facts are viewed in the light most favorable to the nonmovant, drawing all reasonable inferences in their favor. *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012); *Ault v. Speicher,* 634 F.3d 942, 945 (7th Cir.2011).

Once "a properly supported motion for summary judgment is made," the nonmoving party bears the burden to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted); *Seng-Tiong*, 648 F.3d at 496-97. Notably, any party asserting that a fact is or is not genuinely disputed must cite "to particular parts of materials in the record," or show that "an adverse party

cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). Thus, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Seng-Tiong*, 648 F.3d at 497. Additionally, a "court need consider only the cited materials." Fed.R.Civ.P. 56(c)(3).

**B.**
**Summary Judgment Under Local Rule 56.1**

In a summary judgment proceeding, the facts are drawn from the parties' Local Rule 56.1 submissions. "For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment." *Sojka v. Bovis Lend Lease, Inc*., 686 F.3d 394, –, (7th Cir. 2012). Local Rule 56.1 requires a party seeking summary judgment to include with its motion "a statement of material facts as to which the ... party contends there is no genuine issue and that entitle the ... party to a judgment as a matter of law." Local Rule 56.1(a)(3); *Ciomber v. Cooperative Plus, Inc*., 527 F.3d 635, 643 (7th Cir. 2008). Each paragraph must refer to the "affidavits, parts of the record, and other supporting materials" that substantiate the asserted facts. Local Rule 56.1(a)(3); *F.T.C. v. Bay Area Business Council, Inc*., 423 F.3d 627, 633 (7th Cir. 2005).

The party opposing summary judgment must then respond to the movant's statement of proposed material facts; that response must contain both "a response to each numbered paragraph in the moving party's statement," Local Rule 56.1(b)(3)(B), and a separate statement "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment," Local Rule 56.1(b)(3)(C); *Ciomber*, 527 F.3d at 643. Again, each response, and each asserted fact, must be supported with a reference to the record. Local Rule 56.1(b)(3)(B); *Cracco v. Vitran Exp.,*

4

*Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Bay Area Business Council, Inc.*, 423 F.3d at 633. Importantly, responses and facts that are not set out and appropriately supported in an opponent's Rule 56.1 response will not be considered, *see Shaffer*, 662 F.3d at 442 (court need not consider any fact not contained in the parties' Rule 56.1 statements); *Bay Area Business Council.*, 423 F.3d at 633 (court properly disregarded affidavits not referenced in 56.1 submission).

The district court is entitled to enforce strict compliance with its local rules regarding summary judgment motions and certainly with Rule 56 of the Federal Rules of Civil Procedure. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 537 (7th Cir. 2011); *Schmidt v. Eagle Waste & Recycling, Inc.,* 599 F.3d 626, 630 (7th Cir.2010). That goes for *pro se* litigants like Mr. Wofford as well. *Cady v. Sheahan,* 467 F.3d 1057, 1061 (7th Cir.2006); *Greer v. Bd. of Educ.,* 267 F.3d 723, 727 (7th Cir.2001). Accordingly, Officer Celani's facts – to the extent they are properly supported – are deemed admitted. *On-Site Screening, Inc. v. United States*, 687 F.3d 896, 897 (7th Cir. 2012); *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630-31 (7th Cir. 2010).

## C.

### Factual Background

At about 9:45 pm on the evening of August 20, 2009, Officer Celani was one of three police officers on patrol. Officer Celani and his partners, pulled over the car Plaintiff was driving in the 7300 block of South Bell in Chicago. (*56.1(a)(3) Statement of Undisputed Facts* ("*Def.St.*"), ¶ 8). Officer Celani gives no indication in his statement of facts what prompted him or his partners to pull the vehicle over. (*Def.St.*, ¶¶ 8-15). He cites to page 1 of his arrest report in several of his statement's paragraphs, but that, too, gives no indication of why Mr. Wofford was pulled over.

(*Def.St.*, Ex. F, at 1).[1] It merely states the location, the charges – issuance of warrant and possession of about $6 worth of cannabis. (*Def.St.*, Ex. F, at 1). According to Officer Celani's statement, it was only during the course of the stop that he learned there was a warrant for Mr. Wofford's arrest. (*Def.St.*, ¶ 10).

Mr. Wofford was arrested pursuant to the warrant. (*Def.St.*, ¶ 11). The bulletproof vest he was wearing was confiscated (*Def.St.*, ¶ 12; Ex. G), and the Cadillac he was driving was impounded. (*Def.St.*, 13; Ex. H ). According to Mr. Wofford, the vest belonged to his brother. (*Def.St.*, ¶16; Ex. N, at 1). The Cadillac was registered to a Theodore Knighten, Jr. (*Def.St.*, ¶23; Ex. N., at 51). Mr. Wofford was charged with possession of marijuana: a charge that was stricken with leave to reinstate on August 21, 2009. (*Def.St.*, ¶¶ 14-15; Ex. I). Officer Celani gives no indication how this charge came about; in other words, his statement of facts does not indicate that Mr. Wofford or the Cadillac was searched.

## II.
## ANALYSIS

### A.
### Officer Celani Is Entitled to Summary Judgment on
### Mr. Wofford's False Arrest Claim

Officer Celani advances three arguments to support his motion for summary judgment. First, he contends that Mr. Wofford cannot show that he personally violated his constitutional rights. Second, he argues that Mr. Wofford's claim for illegal search and seizure fails because the mandatory supervised release he signed authorized any search, and plaintiff did not own the car he

---

[1] Although Officer Celani does not refer to it, the arrest report states that Mr. Wofford was pulled over for not wearing a safety belt. (*Def.St.*, Ex. F, at 2).

was driving or legally own the bulletproof vest he was wearing. Third, Officer Celani contends that Mr. Wofford's false arrest claim is barred by the parole violation warrant.

The lynchpin of Mr. Wofford's complaint is that Officer Celani and his partners pulled him over for no reason (*Amended Complaint*, ¶ 29(a)), and everything else – the search, the seizure of the bulletproof vest, and the arrest – of course, flows from that. Accordingly, for Officer Celani to succeed in his summary judgment motion, he must show there is no issue of fact that there was probable cause to stop the vehicle, *Whren v. United States,* 517 U.S. 806, 819 (1996); *United States v. Smith*, 668 F.3d 427, 430-31 (7th Cir. 2012), or that there was some intervening circumstance that served to dissipate that taint. *Wong Sun*, 371 U.S. at 487-88; *Atkins v. City of Chicago*, 631 F.3d 823, 826 (7th Cir. 2011).

There is nothing in Officer Celani's statement of facts to suggest that he and his colleagues had probable cause to pull over the Cadillac Mr. Wofford was driving. Consequently, Officer Celani must rely on an intervening circumstance. The warrant for Mr. Wofford's arrest for a parole violation of which he learned during the stop (*Def.St.,* ¶10) fills the bill. "The police did not have probable cause to stop the vehicle in which our [Stanley Wofford] was riding, but clearly if he was our [Stanley Wofford] named in the warrant the illegality of the stop did not invalidate the arrest." *Atkins*, 631 F.3d at 826. Judge Posner explained it this way in *Atkins*:

> In *Green* we said the question was whether "the causal chain has been sufficiently attenuated to dissipate the taint of the illegal conduct," 111 F.3d at 521, and in like vein in *Johnson* we considered whether "a lawful arrest based on any outstanding warrant for a passenger in the vehicle constituted an intervening circumstance that dissipated any taint caused by an initial traffic stop that had lacked reasonable suspicion," 383 F.3d at 544, and concluded that it did. But a simpler way to justify the result in those cases (and this one), without talking about "taints" and "dissipation" and "intervening circumstances" (and what do those terms mean, (really?), is to note simply that the arrest was based on a valid warrant rather than on

7

> anything turned up in the illegal search. If police stopped cars randomly, looking for persons against whom there were outstanding warrants, the drivers and passengers not named in warrants would have good Fourth Amendment claims. But a person named in a valid warrant has no right to be at large, and so suffers no infringement of his rights when he is apprehended unless some other right of his is infringed, as would be the case had the police roughed up Atkins gratuitously in the course of trying to determine whether he was the person named in the warrant. *Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Catlin v. City of Wheaton,* 574 F.3d 361, 366 (7th Cir.2009); *Cortez v. McCauley,* 478 F.3d 1108, 1127 (10th Cir.2007) (en banc). But that is not the plaintiff's complaint.

*Atkins*, 631 F.3d at 826-27.

## B.
## Officer Celani Is Entitled to Summary Judgment on
## Mr. Wofford's Claims Regarding the Searches of His Person and the Cadillac

Officer Celani's main argument as to the Fourth Amendment validity of the search of Mr. Wofford and the Cadillac relies on the mandatory supervised release that Mr. Wofford signed. In it, he consented to searches of his person, his property, and property under his control. The validity of any search depends upon its reasonableness, which "'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Samson v. California*, 547 U.S. 843, 848 (2006)(quoting *United States v. Knights*, 534 U.S. 112, 116 (2001)). Persons on parole, probation, and supervised release, simply by virtue of their status, "'do not enjoy the absolute liberty to which every citizen is entitled . . . .'" *Samson*, 547 U.S. at 848-49 (2006)( quoting *Knights,* 534 U.S. at 119). The additional existence of an agreement informing such persons that they may be subjected to searches further diminishes, if not virtually erases, their expectation to privacy. *See Samson*, 547 U.S. at 849; *Knights*, 534 U.S. at 119-20.

In *Knights*, the probationer had signed an agreement with a clause similar to Plaintiff's consent-to-search clause. The Supreme Court held that a search of the probationer's residence, based only upon reasonable suspicion, was constitutional. *Knights*, 534 U.S. at 121. Following *Knights*, the Supreme Court in *Samson* addressed the search of a parolee based upon neither probable cause nor reasonable suspicion. Noting that Samson's diminished expectation of privacy was further diminished by the parole agreement's consent-to-search clause and weighing his diminished privacy expectation against California's legitimate interest to prevent recidivism, which would be ill-served if reasonable suspicion was required for searches of parolees, the Court concluded "that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Samson*, 547 U.S. at 856.

Prior to *Samson*, *United States v. Barnett*, 415 F.3d 415 F.3d 690 (7th Cir. 2005) had recognized that "Constitutional rights like other rights can be waived, provided that the waiver is knowing and intelligent,"as it is when a parolee signs a mandatory supervised release form. *Id.* at 692. Here, Mr. Wofford didn't want to remain in prison, so he gave up certain rights to avoid the greater loss of rights he would have suffered had he served his full sentence in prison. *Id.* He cut a bargain. "And since imprisonment is a *greater* invasion of personal privacy than being exposed to searches of one's [person or property under one's control] on demand, the bargain that [Mr. Wofford] struck was not only advantageous to him but actually more protective of Fourth Amendment values than the alternative of prison would have been." *Id.* at 691-92. As Judge Posner put it, "[o]ften a big part of the value of a right is what one can get in exchange for giving it up."

Given the alternative of serving the ten more years in prison, [Mr. Wofford] gave up nothing." *Id*. *See also McKune v. Lile,* 536 U.S. 24, 41-43 (2002). [2]

Following *Samson*, the Illinois Supreme Court determined that Illinois' mandatory supervised release consent-to-search provision was, for Fourth Amendment purposes, the same as the one in *Samson*. *People v. Wilson*, 228 Ill.2d 35, 885 N.E.2d 1033, 1043 (2008). Further noting Illinois' legitimate interest in preventing recidivism, the Illinois Supreme Court held that a suspicionless search of the residence of a person on mandatory supervised release was constitutional. *Id.* at 1042-43. Illinois district courts have also found no Fourth Amendment violation with an officers' suspicionless searches of persons on parole or mandatory supervised release. *See United States v. Woodland*, 607 F. Supp. 2d 904, 909-11 (C.D. Ill. 2009) (search of a parolee who was sitting in a passenger seat of a parked car); *United States v. Perkins,* 2006 WL 3718048 at *3-4 (S.D. Ill. 2006) (holding that suspicionless search of parolee's residence was constitutional).

The one sticking point here is that, due to the terseness of Officer Celani's statement of facts – recall that he doesn't address the search at all – it is unclear just when Officer Celani and his colleagues became aware that Mr. Wofford had signed a mandatory supervised release. In *Samson*, the Court noted that, under California precedent, "an officer would not act reasonably in conducting

---

[2] In *McKune v. Lile* 536 U.S. 24, 41-43 (2002), the Court upheld a procedure that allowed statements, which were made by a criminal defendant to mitigate his responsibility and avoid the death penalty, to be used against him as evidence of his guilt. The Court likewise has held that plea bargaining does not violate the Fifth Amendment, even though criminal defendants may feel considerable pressure to admit guilt in order to obtain more lenient treatment. See, *e.g., Bordenkircher v. Hayes,* 434 U.S. 357 (1978);Nor does reducing an inmate's prison wage and taking away personal television and gym access pose the same hard choice faced by the defendants in *Baxter v. Palmigiano,* 425 U.S. 308 (1976). In *Baxter,* a state prisoner objected to the fact that his silence at a prison disciplinary hearing would be held against him.

a suspicionless search absent knowledge that the person stopped for the search is a parolee." 547 U.S. at 857 n.5. The one court in this district that has faced such a situation has concluded that, without a showing of knowledge on the part of the officers, a search cannot be justified on the basis of the target of the search being a parolee subject to a mandatory supervised release. *United States v. Williams*, 702 F.Supp.2d 1021, 1030-31 (N.D.Ill. 2010). *See also New v. Perry*, 2009 WL 483341, *9 (S.D.Ohio 2009)(requiring that officers be aware of search condition in probation order to validate suspicionless search). As it stands, Officer Celani can't hang his hat on Mr. Wofford's consent to search in the mandatory supervised release because he gives no indication that he knew about it.

But, if an arrest warrant that the police learn about only after the stop can attenuate the taint of an illegal stop, could not a mandatory supervised release attenuate the taint of a search without probable cause or reasonable suspicion? Just as the individual subject to an arrest warrant is not at liberty to be at large musing, the individual subject to mandatory supervised release provision is not at liberty to be free from searches – he has waived that Fourth Amendment right. But even if this is not right, as it happens, there are other grounds to validate the search.

First, and perhaps most obvious, "[s]earches incident to arrests are valid in order to find weapons and to search for and seize any evidence on the arrestee's person in order to prevent concealment and to preserve evidence for trial." *United States v. Thomas*, 512 F.3d 383, 387 (7th Cir. 2008). "[A] full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a reasonable search under that Amendment." *Id.* The Seventh Circuit has been clear on this issue: "police are entitled to search the persons and possessions of everyone arrested on probable cause, with or without any reason to suspect that the person is armed

11

or carrying contraband." *United States v. Jackson*, 377 F.3d 715, 716 (7th Cir. 2004). The police learned of the outstanding warrant during the stop. At that point, of course, they had probable cause to arrest and search Mr. Wofford. Accordingly, the search of the plaintiff and the discovery that he was wearing a bulletproof vest was not a violation of his Constitutional rights.

As for the search of the Cadillac, Mr. Wofford's complaint alleges that the search began prior to his placement in the police car and continued after he was in the back seat of the police car. (*Complaint*, at 4) The search, whether conducted with Mr. Wofford next to or near the Cadillac or in the back seat of the police car, was justified. With respect to any search that occurred with Mr. Wofford near the Cadillac, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 351 (2009); *see also U.S. v. Smith*, 697 F.3d 625, 630 (7th Cir. 2012).

With respect to the search that may have occurred while Mr. Wofford was in the police car, police may conduct a warrantless search of a vehicle when probable cause exists that the vehicle contains contraband. *Florida v. White*, 526 U.S. 559, 569 n.3 (1999); *U.S. v. Slone,* 636 F.3d 845, 848 (7th Cir. 2011). In this case, once officers discovered that Mr. Wofford was wearing a bulletproof vest and learned of his mandatory supervised release, they had information that Mr. Wofford was committing at least one offense and possibly several others. *See* 18 U.S.C. § 931(a) ("it shall be unlawful for a person to purchase, own, or possess body armor, if that person has been convicted of a felony that" was a crime of violence); *see also* 720 ILCS 5/24-1.1 (offense of felon in possession of a firearm or ammunition); 720 ILCS 5/33F-2 ("A person commits the offense of unlawful use of body armor when he knowingly wears body armor and is in possession of a

dangerous weapon, other than a firearm, in the commission or attempted commission of any offense.").

Although a bulletproof vest is not itself a firearm, a reasonable inference may be drawn between tools often used with a particular contraband and the contraband itself. "In both the case of drug paraphernalia and drugs and the case of a bullet-proof vest and a firearm, the relationship between the contraband and the tools sometimes used with contraband allows a logical inference to be drawn." *United States v. Lee*, 612 F.3d 170, 184 (3rd Cir. 2010). In light of information that Plaintiff had been convicted of second degree murder, was in violation of his mandatory supervised release, and was wearing a bulletproof vest, probable cause existed that additional contraband might be found in the Cadillac. Even if officers arrested Mr. Wofford and searched his vehicle for one offense (possession of marijuana), for which there may have been no probable cause, the existence of facts establishing probable for a different offense justifies the search. *United States v. Grooms*, 602 F.3d 939, 942 (8th Cir. ,2010) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

Officer Celani advances one final argument regarding the search of Mr. Wofford and the Cadillac. He says that, because he had no possessory interest in either – the car wasn't his, the bulletproof vest was illegal – his rights could not have been violated by the searches. As to the Cadillac, Officer Celani relies on *Rakas v. Illinois,* 439 U.S. 128, 134 (1978), which held that because "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted" a person must have a "a legitimate expectation of privacy in the premises he was using . . . ." 439 U.S. at 134, 143; *United States v. Carlisle*, 614 F.3d 750, 756 (7th Cir. 2010). In this instance, the car didn't belong to Mr. Wofford, it was registered to Theodore Knighten.

An individual doesn't have to own the vehicle he's driving to have a legitimate expectation of privacy in it. "It is well-established that a driver of a borrowed vehicle may establish a reasonable expectation of privacy in a vehicle even though that driver is not the owner of the vehicle." *Johnson v. United States*, 604 F.3d 1016, 1020 (7th Cir. 2010); *United States v. Amaral-Estrada*, 509 F.3d 820, 826-27 (7th Cir. 2007). It was up to Mr. Wofford to establish that expectation of privacy, such as borrowing the car from a friend . *See, e.g., Johnson*, 604 F.3d at 1020. But, despite a number of chances, he didn't even attempt to do so. He has never responded to Officer Celani's motion for summary judgment, filed a statement of facts, or submitted any evidence. He claimed at his deposition that he purchased the car from Mr. Knighten but never got around to registering the title with the Secretary of State (*Def.St.*, Ex. N, at 51), but that unsupported claim is insufficient to create a legitimate privacy interest. *See United States v. Elmore*, 304 F.3d 557, 562 (6th Cir. 2002)(claim that car was purchased but title had not yet been registered did not created an expectation of privacy in the vehicle). Because Mr. Wofford has failed to establish a genuine issue of fact as to whether he had an expectation of privacy in the Cadillac, Officer Celani is entitled to summary judgment on this claim.

As to the bulletproof vest, Officer Celani argues that because the vest was contraband under 18 U.S.C. §931, he had no legitimate expectation of privacy in the vest and therefore the search of Mr. Wofford could not be illegal. Officer Celani likens the vest to an automobile used to transport contraband, citing *Illinois v. Caballes*, 543 U.S. 405 (2005) and *Amaral-Estrada*, *supra*. But Officer Celani leaves for speculation how the car cases apply to the search of a person that leads to the discovery he is wearing a bulletproof vest. If "cars are not to be treated identically with houses or

apartments for Fourth Amendment purposes," *Rakas,* 439 U.S. at 148, how can a bullet proof vest be treated identically with cars?

Again, Officer Celani provides no facts regarding the mechanics of the searches. Mr. Wofford might have been wearing the vest under a shirt or jacket. Officer Celani does not state that it was plainly visible when he and his colleagues pull Mr. Wofford over. The result of a search of a person does not legitimize it, otherwise every successful search would be legal and there would be far fewer editions of the Federal Reporter and the Federal Supplement than there are now. Heroin is contraband, too, but that does not legitimize any illegal search of an individual that turns it up. But, as discussed earlier, the vest was discovered in a legal search incident to arrest, Officer Celani is entitled to summary judgment on this claim.

## C.
### Officer Celani Is Entitled To Summary Judgment On The Claim That The Cadillac And The Bulletproof Vest Were Illegally Seized

Mr. Wofford alleges that the Cadillac and the bulletproof vest were illegally seized, that he sought to retrieve the vest but was unable to do so, and that the impoundment of the Cadillac for several months resulted in several hundreds of dollars in fees. He does not indicate what claims he intends to bring for these actions but, liberally construed, his complaint appears to assert illegal seizure, conversion, and possibly due process violations with procedures for seeking both items' return. The summary judgment evidence demonstrates that he cannot succeed on these claims.

First, Mr. Wofford admitted in his deposition that his brother, and not Plaintiff, was the owner of the bullet-proof vest. (*Def.St.*, ¶ 16; Ex. N, at 75). As to the Cadillac, as already noted, Mr. Wofford claimed that he had purchased the vehicle but that Theodore Knighten was still listed as the owner on the title. (*Def.St.*, ¶ 23; Ex. N, at 51). A constitutional "'seizure of property ...

occurs when there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992). Without a possessory interest in either the vest or the car, Mr. Wofford lacks standing to bring a Fourth Amendment claim about their seizure. *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001)(husband lacked standing to raise a Fourth Amendment claim for the seizure of property that belonged to the wife).

Even if Mr. Wofford had standing to assert wrongful seizure of the vest and wrongful impoundment of the Cadillac, the summary judgment evidence demonstrates that neither act was illegal. It was illegal for Mr. Wofford to possess the bulletproof vest. *See* 18 U.S.C. § 931(a) (federal law prohibits persons convicted of a crime of violence to possess body armor); *United States v. Alexander*, 573 F.3d 465, 475 (7th Cir. 2009) (officers may seize items when their possession form the basis of an offense). As for the Cadillac, officers are permitted, following the arrest of a driver and with no other driver available, to remove and impound a vehicle to remove it from the public roadway. *See United States v. Duguay*, 93 F.3d 346, 353 & n.2 (7th Cir. 1996). Mr. Wofford cannot succeed with claims regarding either the seizure of the vest or the impoundment of the Cadillac.

To the extent Mr. Wofford alleges conversion or due process violations with his inability to retrieve the vest and Cadillac, the summary judgment evidence demonstrates that Officer Celani was not involved with either item after the August 20, 2009, arrest. (*Def.St.*, ¶¶ 18, 26; *see also* Ex. K (notices from the Bureau of Traffic Services providing information of the procedures to retrieve the car do not indicate that Officer Celani was involved with such procedures)). "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012); *see also Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that

16

one employee do another's job"). Mr. Wofford provides no evidence indicating that Officer Celani, a Chicago police officer, had any involvement or responsibility with the return of items seized during an arrest or an impounded vehicle.

Moreover, in order to maintain a conversion claim, Mr. Wofford would have to show: (1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005); *Cirrincione v. Johnson,* 184 Ill.2d 109, 703 N.E.2d 67, 70 (1998). He has not done so. As a convicted murderer, he has no right to possess a bulletproof vest. 18 U.S.C. § 931(a). And, as already noted, Mr. Celani, by failing to participate in these proceedings despite repeated opportunities to have done so, has made no showing that he owns the Cadillac.[3]

Accordingly, Officer Celani is entitled to summary judgment on any claims that he either improperly seized the bulletproof vest or impounded the Cadillac or that he is liable for Mr. Wofford's inability to retrieve either item.

---

[3] While the defendant has referred to Mr. Wofford's unsupported statement of ownership at his deposition, there is insufficient evidence on the record even viewed most favorable to the plaintiff on which to conclude that there is a disputed issue of fact on the question of ownership. *See Elmore*, 304 F.3d at 562. Summary judgment is not to be defeated merely because a party makes some factual claim. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue' for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986).

# D.
## Any State Law Claims Mr. Wofford May Be Advancing Are Dismissed Without Prejudice

Finally, Officer Celani argues that, to the extent that any of Mr. Wofford's claims against him can be considered state-law tort claims – such as false arrest, malicious prosecution, conversion – those claims are time-barred. Under Illinois's Local Governmental and Governmental Employee Tort Immunity Act:

> No civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued.
>
>      \*   \*   \*
>
> For purposes of this Article, the term "civil action" includes any action, whether based upon the common law or statutes or Constitution of this State.

745 ILCS 10/8-101(a), (c).

The question is once the federal claims have been resolved ought the court dismiss the state law claims that were brought under the court's supplemental jurisdiction. Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits. *Leister v. Dovetail, Inc.,* 546 F.3d 875, 882 (7th Cir.2008); *Redwood v. Dobson*, 476 F.3d 462, 467 (7th Cir. 2007); 28 U.S.C. § 1367(c)(3). But this is not an inflexible rule. A district court is never required to relinquish jurisdiction over state law claims merely because the federal claims were dismissed before trial. As the plain language of § 1367(c) reflects – "the district courts *may* decline to exercise supplemental jurisdiction." The decision whether to exercise that jurisdiction after dismissing every claim over which it had original

jurisdiction is purely discretionary. *Carlsbad Technology, Inc. v. HIF Bio, Inc.,* __ U.S.__, 129 S.Ct. 1862, 1866 (2009); *Miller,* 600 F.3d at 738. It is only when a claim falls outside the supplemental jurisdiction that dismissal is required, unless the plaintiff can point to an independent basis of jurisdiction. *Muscarello v. Ogle County Bd. of Com'rs,* 610 F.3d 416, 426 (7th Cir.2010).

Thus, the question is whether the possible state court claims raised by Mr. Wofford should be dismissed without prejudice. Sound exercise of discretion counsels for dismissal rather than for resolving those questions here. First, Mr. Wofford has not participated in these proceedings and while he should not be rewarded for having not done so, resolution of questions not required by questions over which there is federal jurisdiction and which the defendant is entitled to have resolved, ought be postponed to afford Mr. Wofford an opportunity to be heard.

Second, the possible non-federal questions that may be lurking in Mr. Wofford's complaint involve matters of state law and local practice in the state criminal courts. These are issues over which a state court judge would have far greater experience and daily involvement and which would play a decisive role in whether the claims are time barred under Illinois law. That specialized knowledge makes it more appropriate that the questions be decided in a state forum. While it may well be that two of the potential issues are time barred, it is unclear whether a third one is and there should not be piecemeal resolution of the state court claims when they can all be resolved in one forum and there will be no lurking issues of uncertainty.

**CONCLUSION**

For the foregoing reasons, the defendants' motion for summary judgment [#66] is GRANTED on all of the federal claims raised by Mr. Wofford. As to any state court claims that may be raised by Mr. Wofford, they are dismissed without prejudice.

DATE: 1/28/13                    ENTERED: _____
                                           UNITED STATES MAGISTRATE JUDGE